

**Signed and Filed: April 11, 2007**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

DAVID KIMMEL,

    Debtor.

Case No. 05-35269
Chapter 7

### MEMORANDUM DECISION REGARDING CREDITOR'S POST-DISCHARGE ATTEMPTS TO COLLECT JUDGMENT

A debtor's discharge in bankruptcy would not do her much good if her pre-petition creditors could still garnish her wages to pay their claims. The creditor in this case has a creative theory for doing just that: he argues that her discharge did not affect his claim against her husband, that her husband had an interest in her wages as community property, and that her husband fraudulently transferred that interest to her by entering into a postnuptial agreement. The creditor's fraudulent transfer claim, besides

/ / /

-1-

being untimely, is barred by Section 524(a)(3),[1] which enjoins holders of pre-petition community claims from collecting or recovering from community property acquired post-petition.

I. Facts

In 1991 creditor William Rooz ("Rooz") filed an action against Roberta Kimmel ("Roberta") and David Kimmel ("David") (San Mateo Superior Ct., Case No. 368482) (the "Original Action"). Roberta filed a voluntary Chapter 7 petition in 1993 (Case No. 99-33089) and thereafter received her discharge. Rooz continued to prosecute the Original Action against David. In May of 1995 Rooz obtained a judgment against David (the "Judgment"). Rooz alleges that the total Judgment debt with interest and attorneys' fees is now over $1 million.

Around July of 1995 David entered into a Postnuptial Agreement with Roberta. No party has provided the court with a copy of that agreement. Rooz does not dispute that the agreement complies with the California Family Code but he asserts that it transfers to Roberta community property that would otherwise be available to satisfy the Judgment.

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052 (incorporating by reference Fed. R. Civ. P. 52(a)).
Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, because the bankruptcy cases at issue were filed before its effective date (generally October 17, 2005).
This memorandum decision is being filed concurrently in the bankruptcy cases of both Roberta Kimmel (93-33089) and David Kimmel (05-35269).

In October of 2006 Rooz filed a complaint against Roberta and Doe defendants in state court (the "Complaint") asserting claims under the California version of the Uniform Fraudulent Transfer Act, Cal. Civ. Code §§ 3439 et seq. ("UFTA") and for "a continuing conspiracy to deprive [Rooz] of payments they were obligated to pay under the [J]udgment" (San Francisco Superior Court, Case No. CGC-06-456731). The conspiracy claim is somewhat vague but Rooz has clarified that it relies on his UFTA theories.

The purported community property described in the Complaint is Roberta's salary earned after the Postnuptial Agreement became effective, alleged to be approximately $60,000 per year. Rooz argues that Roberta's salary is community property but that the Postnuptial Agreement transmutes the salary into her separate property either when it is received, or when it is deposited into her account, or both.[2] Rooz argues in the alternative that he can avoid the Postnuptial Agreement itself.[3]

In response to the Complaint Roberta filed a motion to reopen her bankruptcy case, which was granted, and she removed the action to this court. Roberta also filed an answer and a motion for judgment on the pleadings in this removed action.

Meanwhile David filed his own voluntary Chapter 7 petition on October 16, 2005 (Case No. 05-35269). Rooz contested the

---

[2] The Complaint alleges (¶ 16) that Roberta's salary and funds deposited into her account "at least four years last past, and up to October 15, 2005, are subject to an accounting and an award to Mr. Rooz as the creditor of Mr. David Kimmel under the [J]udgment."

[3] The Complaint does not actually claim that the Postnuptial Agreement was a fraudulent transfer, but the court treats Rooz's arguments on that issue as a proposed amendment to the Complaint.

-3-

dischargeability of the Judgment (A.P. No. 06-3047) but the court eventually dismissed that adversary proceeding with prejudice. Rooz appealed the dismissal to the Bankruptcy Appellate Panel of the Ninth Circuit which affirmed in an unpublished Memorandum (BAP No. NC-06-1252-PaDB). In January of 2007 Rooz appealed that decision to the Court of Appeals for the Ninth Circuit (C.A. No. 07-15155).

David's bankruptcy case was closed after he received his discharge. He filed a motion to reopen his bankruptcy case (which had already been reopened by Rooz, but under conditions that might cause it to be closed again). David combined this motion to reopen with a motion to enforce the discharge injunction of Section 524, which he asserts is being violated by this removed action against Roberta. He and Roberta are represented by the same bankruptcy counsel.

Rooz filed opposition papers to these motions, Roberta and David filed replies, and these matters came on for hearing on March 9, 2007. Rooz did not file a written motion to remand this removed action but at oral argument, after the court noted the lack of any such motion, his counsel made an oral motion to remand.

II. <u>Jurisdiction, and oral remand motion</u>

The court is satisfied that it has jurisdiction, that this is a core proceeding, and that remand is inappropriate. Roberta and David argue that Rooz's action is barred by the discharge injunction. See 11 U.S.C. § 524. Determining what is and is not covered by the discharge injunction is a core proceeding that is

-4-

properly decided by this court.  The associated issues of
California law are not complex and deciding them in this forum
will not prejudice Rooz.  His oral motion for remand is untimely
and is not persuasive on the merits.  It will be denied.  See 28
U.S.C. § 157(b)(2)(I) and (O); 28 U.S.C. §§ 1334, 1441, and 1452.[4]

III. Discussion

There is no dispute that California permits postnuptial
agreements to transmute community property into separate property,
but such transmutation can amount to a fraudulent transfer.  For
example, when a husband transferred his interest in a community
property house to his wife, that was held to be a fraudulent
transfer in Reddy v. Gonzalez, 8 Cal.App.4th 118, 10 Cal.Rptr.2d
55 (1992), disapproved on other grounds by Annod Corp. v. Hamilton
& Samuels, 100 Cal.App.4th 1286, 1293; 123 Cal.Rptr.2d 924, 928
(2002).

More recently, a California Court of Appeal has held that a
marital agreement transmuting future wages into separate property
was a fraudulent transfer.  State Board of Equalization v. Woo, 82
Cal.App.4th 481, 483-84; 98 Cal.Rptr.2d 206, 208 (2000) (rejecting
argument that wife's future earnings were a mere expectancy rather
than community property in which husband had an interest).

Therefore the court assumes without deciding that Rooz states
a claim for relief under the UFTA.  The issues presented are
whether that claim is time-barred under California law or else

---

[4] The court also notes that Rooz's statement pursuant to Rule 9027(e)(3) includes the following: "Plaintiff asserts that the action is a non core proceeding but will consent to the entry of final orders or judgment by the bankruptcy judge."

barred by Section 524 of the Bankruptcy Code.[5]

    A.   <u>Rooz's UFTA claim is barred by the applicable California statute of repose</u>

Rooz alleges that he did not learn of the Postnuptial Agreement until recently, but provisions of the UFTA impose not only a four year statute of limitations but also a seven year statute of repose: "Notwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is <u>extinguished</u> if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred." <u>See</u> Cal. Civ. Code § 3439.09(c) (emphasis added). The Posnuptial Agreement was entered into over seven years ago. Therefore, any attempt by Rooz to avoid it under the UFTA is time-barred. <u>See</u> <u>Roach v. Lee</u>, 369 F.Supp.2d 1194, 1197-1200 & n.3 (C.D. Cal. 2005) (fraudulent transfer claim barred, even though fraud was allegedly concealed and "[e]ven though [plaintiff] filed his complaint less than one year after discovering the fraud," because "he filed his complaint more than seven years after the fraudulent transfer.").

The Complaint anticipates this obstacle by treating each

---

[5] Roberta alleges that the California claims are barred because David's bankruptcy trustee has exclusive standing bring a UFTA action. The court disagrees.
    The right to maintain a UFTA action belongs to individual creditors prior to bankruptcy. Once the bankruptcy case is commenced the automatic stay prevents those creditors from interfering with the right that has passed to the trustee as the representative of all creditors. <u>See, e.g.</u>, <u>In re MortgageAmerica Corp.</u>, 714 F.2d 1266, 1275-78 (5th Cir. 1983) (fraudulent transfer action vested in trustee, and automatic stay prohibited creditor from bringing such action). Once the case is closed, however, the automatic stay terminates (11 U.S.C. § 362(c)) and the right reverts to creditors.

-6-

Case: 05-35269   Doc# 21   Filed: 04/11/07   Entered: 04/12/07 09:11:38   Page 6 of 16

occasion when Roberta receives or deposits her paycheck as a separate transmutation of community property into separate property. The problem with this argument is that if the Postnuptial Agreement is not avoided then, by definition, Roberta's wages are already her separate property even before she receives or deposits them. Therefore there is no transmutation that could be the basis for any fraudulent transfer claim.

For all of these reasons, Rooz's UFTA claim is time-barred. Alternatively, even if there were no time bar, Rooz's claim would be barred by the Bankruptcy Code.

B. <u>Rooz's claims are barred by Section 524</u>

Rooz's Original Action against Roberta and David was filed in 1991, well before Roberta filed her Chapter 7 case in 1993. Therefore any personal liability that Roberta had to Rooz, including any liability that she might have had as David's wife, was a pre-petition claim that was discharged in her bankruptcy case. Rooz cannot collect the Judgment from Roberta as a personal liability. See 11 U.S.C. § 524(a)(1) and (2).[6]

---

[6] Section 524(a)(1) and (2) provide, in full:

(a) A discharge in a case under this title --

    (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the <u>personal liability</u> of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a <u>personal</u>

-7-

David has also received a discharge, and the court has dismissed Rooz's nondischargeability action against David. Unless that dismissal is reversed on appeal and Rooz ultimately prevails in his nondischargeability action, he cannot collect the Judgment as a personal liability of David either.

Rooz argues in effect that he is not seeking to impose personal liability on either Roberta or David on account of his claims in the Original Action, but instead he is attempting to recover community property (Roberta's salary) that was fraudulently transferred to frustrate collection of his Judgment against David. The court assumes without deciding that recovering Roberta's wages and applying them to pay the Judgment would be something different from imposing personal liability on Roberta for the Judgment, because in this community property state she was not the sole owner of her wages prior to the Prenuptial Agreement. But cf. Local Loan Co. v. Hunt, 292 U.S. 234, 243-45 (1934) (rejecting creditor's argument that enforcing assignment of future wages would be something other than imposing personal liability); In re Miranda Soto, 667 F.2d 235 (1st Cir. 1981) (continuing vitality of Hunt); In re Chetto, 282 B.R. 215, 216-18 (Bankr. N.D. Ill. 2002) (same).

Even applying that assumption, Rooz's claims are barred by the Bankruptcy Code's treatment of community claims, which are defined in Section 101(7) to mean claims "that arose before the commencement of the case concerning the debtor [Roberta] for which

---

liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(1) and (2) (emphasis added).

-8-

property of the kind specified in section 541(a)(2) [i.e., most community property[7]] is liable, whether or not there is any such property at the time of the commencement of the case."  11 U.S.C. § 101(7).  Rooz is asserting a community claim because he asserts that Roberta's wages are community property and that such property is liable for the Judgment against David.  See also In re Soderling, 998 F.2d 730, 733 (9th Cir. 1993) (explaining definition of community claim).  Section 524(a)(3) provides:

> (a) A discharge in a case under this title --
>
> * * *
>
> (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, <u>property of the debtor of the kind specified in section 541(a)(2) of this title</u> [i.e., Roberta's wages] <u>that is acquired after the commencement of the case, on account of any allowable community claim</u>, except a community claim that is excepted from discharge under section 523,

---

[7] Section 541(a)(2) provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:

* * *

(2) <u>All interests of the debtor and the debtor's spouse in community property</u> as of the commencement of the case that is --

    (A) <u>under the sole</u>, equal, or joint <u>management and control of the debtor [i.e., Roberta]</u>; or

    (B) <u>liable for</u> an allowable claim against the debtor, or for both an allowable claim against the debtor and <u>an allowable claim against the debtor's spouse [i.e., David]</u>, to the extent that such interest is so liable.

11 U.S.C. § 541(a)(2) (emphasis added).

-9-

1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a)(3) (emphasis added).

Regardless whether David ever received a discharge, Section 524(a)(3) protects Roberta from any action, process, or act "to collect or recover from, or offset against" her wages "on account of" the Judgment against David. 11 U.S.C. § 524(a)(3). As summarized by a leading treatise, "after-acquired community property will be free from prebankruptcy creditor claims against <u>either</u> spouse even when only one spouse [Roberta] has filed a bankruptcy case." 5 L. King et al., <u>Collier on Bankruptcy</u> (15th ed. Rev.) ("<u>Collier on Bankruptcy</u>") ¶ 524.02[3][a], at pp. 524-27 to -28, text accompanying n. 80 (emphasis added).

The policy of Section 523(a)(3) is succinctly explained in <u>In re Costanza</u>, 151 B.R. 588, 589-90 (Bankr. D.N.M. 1993):

> The discharge received by [wife] provides her a fresh start. It shields all her after acquired property from the claim[s] of her creditors, including community claims based upon her husband's wrongdoing. It provides the marital community, of which she is an equal member, a fresh start.[] Such is the clearly stated policy of Congress.
>
> . . . For those who wish to pursue the matter, there may be no better source than the article written by Alan Pedlar, <u>Community Property and the Bankruptcy Reform Act of 1978</u>, 11 St. Mary's L.J. 349 (1979) ["Pedlar, <u>Community Property</u>"]. The article suggests the possibility that "the Devil himself could effectively receive a discharge in bankruptcy if he were married to Snow White." <u>Id.</u> at 382. To this I would add: if he does not treat her better than his creditors, she

-10-

will, by divorcing him, deny his discharge.[8]

The cases are uniform in recognizing this effect of Section 524(a)(3). <u>See, e.g.</u>, <u>Soderling</u>, 998 F.2d at 733 ("[a]ll claims against a marital community are discharged," except for nondischargeable community claims); <u>In re Homan</u>, 112 B.R. 356, 360 (9th Cir. BAP 1989) (stating in dicta that after-acquired community property is immune from collection efforts, even if creditor's claim is only against nondebtor spouse); <u>In re Hull</u>, 251 B.R. 726, 732 (9th Cir. BAP 2000) (recognizing effect of Section 524(a)(3)); <u>In re Rollinson</u>, 322 B.R. 879, 883 (Bankr. D. Ariz. 2005) (creditor's claim barred by Section 524(a)(3)); <u>In re Strickland</u>, 153 B.R. 909 (Bankr. D.N.M. 1993) (same); <u>In re Schmiedel</u>, 236 B.R. 393 (Bankr. E.D. Wis. 1999) (same).

Rooz was not without a remedy. Once Roberta filed her voluntary Chapter 7 petition Rooz had the opportunity to prove (a) that his claim was nondischargeable by Roberta, or (b) that his claim would be nondischargeable by David in what was then a hypothetical case by David, or (c) that David would be denied a discharge in his hypothetical case. <u>See</u> 11 U.S.C. § 524(a)(3) (nondischargeability) <u>and</u> § 524(b) (denial of discharge).[9] If

---

[8] A footnote omitted from the above quote states: "Section 524(a)(3) is only available to the marital community. Upon dissolution of the marriage its protection no longer exists. Collier, 3 Collier on Bankruptcy, ¶ 524.01[2] at n.16 (15th ed. 1992); Pedlar, <u>Community Property and the Bankruptcy Reform Act of 1978</u>, 11 St. Mary's L.J. 349 (1979) at n. 134." <u>Costanza</u>, 151 B.R. at 589 n. 5.

[9] Section 524(b) provides in relevant part, "Subsection (a)(3) of this section does not apply if -- * * * (2)(A) the court would not grant the debtor's spouse [David] a discharge in a case under chapter 7 of this title concerning such spouse commenced on [Roberta's petition date]; and (B) a determination that the court

-11-

Rooz had proved any one of these things then Section 524(a)(3) would not protect after-acquired community property. See Rollinson, 322 B.R. at 883 ("the economic sins of either spouse shall be visited upon the community property when a discharge is denied as to a community debt").

Rooz had only a limited time in Roberta's case in which to establish one of these things and the deadline for doing so has long since passed:

> As a result of the statutory scheme of subsections 524(a)(3) and (b), the bankruptcy court will often be called upon to determine the hypothetical discharge of a nondebtor spouse or to rule upon the hypothetical nondischargeability of one or more of the nondebtor's debts. Procedurally, section 524(b) requires a creditor to file an objection to the hypothetical discharge of the nondebtor spouse within the same time limits as an objection to the debtor's discharge as prescribed by Federal Rule of Bankruptcy Procedure 4004(a). Similarly, complaints to determine the nondischargeability of an obligation of the debtor or of an obligation of the nondebtor spouse in a hypothetical case commenced by such spouse must be filed within the time period set forth in Federal Rule of Bankruptcy Procedure 4007(c). Consequently, creditors must act diligently with respect to both the debtor and the nondebtor spouse to preserve their rights as to the discharge or dischargeability of their claims.

5 Collier on Bankruptcy ¶ 524.02[3][b] and [c], at pp. 524-29 to -32 (footnotes omitted).[10]

---

would not so grant such a discharge is made by the bankruptcy court within the time and in the manner provided for a determination under section 727 of this title of whether a debtor is granted a discharge." 11 U.S.C. § 524(b)(2).

[10] There are no due process concerns because Rooz had notice of Roberta's bankruptcy case and knew that Roberta was then (and is now) David's spouse, so he could have filed a timely complaint in Roberta's case. See Schmiedel, 236 B.R. at 397-98 (creditor who had actual knowledge that nondebtor spouse was married to debtor had sufficient notice that Section 524(a)(3) would apply)

-12-

To summarize, the holder of a community claim must take action in an innocent spouse's bankruptcy case, even if his real quarrel is with the nonfiling, wrongdoing spouse. Once the deadlines in the first spouse's case have passed, it is too late to collect a pre-petition community claim from after-acquired community property.

This is not to say that Roberta's discharge protected David's separate property or protected him from personal liability (which is the subject of Rooz's pending appeal to the Ninth Circuit). See, e.g., In re Moore, 318 B.R. 679 (Bankr. W.D. Wis. 2004) (Section 524(a)(3) did not bar creditor from pursuing non-debtor's separate property). Her discharge does not extend that far, but Congress decided to protect after-acquired community property as a way of protecting the fresh start of the debtor (Roberta) even thought non-debtor spouses (David) are thereby somewhat protected. 5 Collier on Bankruptcy ¶ 524.02[3][a] at pp. 524-28 to -29, text accompanying nn. 83-84. See generally Alan Pedlar, Community Property and the Bankruptcy Reform Act of 1978, 11 St. Mary's L.J. 349, 380-86 (1979) (discussing Section 524(a)(3) and (b)).

Rooz cites Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc., 29 Cal.App.4th 1828, 35 Cal.Rptr.2d 348 (1994), in which a

---

(distinguishing In re Sweitzer, 111 B.R. 792, 797-99 (Bankr. W.D. Wis. 1990) (dicta discussing potential due process concerns)).
   Nor is Rooz saved by In re Maready, 122 B.R. 378 (9th Cir. BAP 1991). In Maready the creditor had missed the deadlines to object to the discharge or dischargeability but the BAP held that the creditor could still contest whether or not a claim was a community claim -- the creditor could argue that Section 524(a)(3) did not apply because she held a separate claim against the non-debtor spouse, not a community claim. That does not help Rooz because his only theory for reaching Roberta's wages is that he holds a community claim -- that he can collect the Judgment against David from Roberta's wages as community property.

-13-

creditor was permitted to maintain a UFTA action against a corporation and its shareholders after the corporation's voluntary Chapter 7 bankruptcy. That case is entirely inapposite. Corporations do not have community property nor are they eligible to receive a discharge in Chapter 7. See 11 U.S.C. § 727(a)(1).

Rooz also cites Sanwa Bank California v. Chang, 87 Cal.App.4th 1314, 105 Cal.Rptr.2d 330 (2001), which held that a husband's discharge injunction did not protect his wife from a fraudulent transfer action to recover the family residence that he had conveyed to her before filing his bankruptcy petition. As that decision specifically notes, the house "was pre-bankruptcy property, not after-acquired property . . . ." Id., 87 Cal.App.4th at 1319, 105 Cal.Rptr.2d at 333 (distinguishing Strickland, 153 B.R. 909). Therefore Section 524(a)(3) was inapplicable by its own terms. It only protects after-acquired community property.

At least one case has specifically applied Section 524(a)(3) to bar an action to garnish a non-debtor spouse's wages:

> Norwest [the creditor] seeks to execute against community property belonging to [Nellie and William] Lawver[] in the form of Nellie's wages. The language of 11 U.S.C. 524(a)(3) prohibits a creditor from seeking satisfaction of a community debt by resorting to the debtor's property through an action against the non-bankrupt spouse commenced after the filing of the petition in bankruptcy.

Norwest Financial v. Lawver, 109 Nev. 242, 246-47; 849 P.2d 324, 327 (1993) (emphasis added).

Bankruptcy courts have also recognized in dicta that the discharge injunction in Section 524(a)(3) protects community property wages. See In re Passmore, 156 B.R. 595, 598 (Bankr.

-14-

E.D. Wis. 1993) ("After Mr. Passmore's [the debtor's] discharge is issued, the discharge injunction will prevent creditors holding community claims from recovering *either* spouse's interest in funds classified as marital property, <u>such as Mrs. Passmore's wages</u>, even though she will not receive a discharge.") (italics in original, underlining added); <u>In re Nelson</u>, 308 B.R. 343 (Bankr. E.D. Wis. 2004) (if wife had filed her Chapter 7 case prior to husband's Chapter 13 case, then her discharge injunction under Section 524(a)(3) would render community claims unenforceable against husband's subsequent wages).

For all of these reasons Rooz's claims are barred by the discharge injunction of Section 524(a)(3).

### C. <u>David's motion</u>

The court assumes without deciding that David would also have standing to protect Roberta's alleged community property wages, earned prior to his own bankruptcy case, by seeking enforcement of Section 524(a)(3). But as the court observed at oral argument, David's motion to enforce that section appears to seek what the statute already provides automatically: an injunction. <u>See</u> 5 <u>Collier on Bankruptcy</u> ¶ 524.02[2] at p. 524-14.10 ("Like the automatic stay of section 362(a), the discharge injunction is the equivalent of a court order.") (footnote omitted). An injunction or declaratory relief regarding the scope of the discharge injunction would also require an adversary proceeding. <u>See</u> Fed. R. Bankr. P. 7001(9); <u>In re Munoz</u>, 287 B.R. 546, 551 (9th Cir. BAP 2002). For these reasons, David's combined motion to reopen and to enforce the discharge injunction will be denied without

-15-

Case: 05-35269    Doc# 21    Filed: 04/11/07    Entered: 04/12/07 09:11:38    Page 15 of 16

prejudice.

IV. <u>Conclusion</u>

Roberta is entitled to judgment on the pleadings. Rooz's UFTA claim against her is barred by the seven year statute of repose in California Civil Code section 3439.09(c). Rooz's UFTA claim is also barred by the discharge injunction of Section 524(a)(3). Rooz has suggested no amendment to his Complaint that would state a claim on which relief could be granted.

By separate orders the court will deny Rooz's oral motion for remand, grant Roberta's motion for judgment on the pleadings, dismiss this removed action with prejudice, and deny without prejudice David's combined motion to reopen his case and enforce the discharge injunction.[11]

* END OF MEMORANDUM DECISION *

---

[11] Any further proceedings by Rooz against either David or Roberta, however, will likely violate Section 524 and expose him to sanctions. <u>In re Zilog, Inc.</u>, 450 F.3d 996, 1007-10 (9th Cir. 2006) ("A party who knowingly violates the discharge injunction [of Section 524] can be held in contempt under section 105(a) of the bankruptcy code.") (citations omitted).